UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| 3D SYSTEMS CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-03252-RLY-MJD |
| ) | |
| PAUL A. MILLER, ) | |
| UNION TECH, INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

This matter comes before the Court on Defendants' *Motion to Compel Arbitration and to Stay Proceedings*. [Dkt. 50.][1] For the reasons set forth below, the Court **DENIES** the motion.

**I.      Background**

Defendant Paul A. Miller ("Miller") worked as Plaintiff's Director of Sales until his resignation on August 25, 2017. At the heart of this case is Plaintiff's contention that Miller generated a report of Plaintiff's salespeople and related marketing information from throughout the world for a period of five years from 2012 to 2017 (the "Spreadsheet") and intentionally retained the Spreadsheet following his resignation in order to misappropriate the information contained in the Spreadsheet on behalf of Miller's new employer and Plaintiff's direct competitor, Defendant UnionTech, Inc. ("UnionTech").

---

[1] On January 2, 2018, Defendant Paul A. Miller for himself and not on behalf of Defendant UnionTech, filed his *Motion to Withdraw the Motion to Compel Arbitration and Stay Proceedings*. [Dkt. 74.] The Court **GRANTS** Defendant Miller's motion to withdraw [Dkt. 74] and proceeds to consider the merits of the *Motion to Compel Arbitration and Stay Proceedings* [Dkt. 50] as it is applicable to Defendant UnionTech.

1

Plaintiff 3D Systems ("Plaintiff" or "3D Systems") is a provider of 3D content-to-print solutions, including 3D printers, print materials, and on-demand custom parts services. In 1996, Plaintiff hired Miller as a sales representative and later promoted Miller to the position of Director of Sales. In this position, Miller was responsible for promoting and developing sales of 3D Systems' products and managing current and prospective customer relationships within his seven-state sales territory, encompassing Indiana, Illinois, Missouri, Iowa, Tennessee, Kentucky, and West Virginia. As a result of his role, Miller had access to Plaintiff's confidential information including, without limitation, current and prospective customer lists and related databases, pricing data, purchasing histories, consumer data, market intelligence and strategies, vendor and supplier data, product formulations and development information, proprietary manufacturing processes, and overall industry and product expertise. On July 10, 2013, Miller executed an Employee Confidentiality and Non-Solicitation and Arbitration Agreement (the "Agreement") as a condition of his continued employment at 3D Systems and as a condition of his continued access to 3D Systems' confidential information.

The Agreement contains an Arbitration Provision, which provides, in relevant part:

> **All controversies, claims, disputes, and matters in question arising out of, or relating to, the Employee's employment with the Company or arising out of, or relating to this Agreement (or the breach thereof), shall be decided by arbitration in accordance with the provisions of this paragraph, with the sole exception of controversies, claims, disputes, and matters in question properly made or brought pursuant to the National Labor Relations Act.** Employee understands and acknowledges that nothing in this Agreement restricts Employee's right (if applicable) to file unfair labor practice charges or otherwise access the processes of the National Labor Relations Board.
>
> The arbitration proceedings shall be conducted under the applicable rules of the American Arbitration Association ("AAA"). The arbitration board will consist of one arbitrator chosen by the Parties. If the Parties cannot agree upon an arbitrator, they shall submit to the procedure utilized by AAA to choose an arbitrator.

> The decision of the arbitrator, including determination of amount of any damages suffered, shall be conclusive, final, and binding on the Parties, their respective heirs, legal representatives, successors, and assigns. The arbitrator shall be bound to follow South Carolina law and case precedent. Any decision of the arbitrator will not be binding if the arbitrator fails to follow South Carolina law and case precedent. The arbitrator shall render a written arbitration decision that reveals the essential findings and conclusions upon which the award is based.

[Dkt. 1 at 33-34 (emphasis added).]

On August 14, 2017, Miller provided 3D Systems with notice of his resignation, to be effective August 25, 2017. Shortly thereafter, Miller started his employment with UnionTech. 3D Systems then filed this lawsuit against Miller and UnionTech alleging misappropriation of trade secrets, breach of contract, and tortious interference with contractual obligations, among other things. UnionTech now moves to compel the arbitration of Plaintiff's claims against UnionTech pursuant to the arbitration provision in the Agreement between 3D Systems and Miller.

## II. Discussion

On January 2, 2018, Miller withdrew his *Motion to Compel Arbitration and Stay Proceedings* [Dkt. 50] solely as it pertains to him and waived any claim or right to arbitration. [Dkt. 74.] Thus, the Court proceeds to consider the merits of the motion as it is applicable to UnionTech.[2]

The parties agree that South Carolina law applies to the interpretation of the arbitration provision in the Agreement. However, they disagree on whether South Carolina applies the federal substantive law of arbitrability to determine if a non-signatory can enforce an arbitration

---

[2] On January 16, 2018, UnionTech filed its response in opposition to Miller's Motion to Withdraw his Motion to Compel Arbitration and Stay Proceeding. [Dkt. 85.] UnionTech argues that it is entitled to compel Plaintiff to arbitration under the equitable estoppel doctrine and that Miller's waiver of his rights to arbitrate or participate in the arbitration is "irrelevant to the equitable estoppel analysis." [Dkt. 85 at 3.] Thus, UnionTech argues that Miller's withdrawal of his motion "has no impact on UnionTech's pending motion to compel arbitration." [*Id.*] The Court acknowledges UnionTech's response and notes that UnionTech's motion to compel arbitration would have been denied even if Miller's motion to compel arbitration had not been withdrawn.

3

agreement. UnionTech argues that Plaintiff's claims against UnionTech are subject to arbitration under the federal doctrine of equitable estoppel because Plaintiff's claims either rely on the Agreement or raise allegations of concerted misconduct by Miller and UnionTech. [Dkt. 51 at 2.] In response, Plaintiff argues that traditional state law, not federal law, exclusively governs the issue of arbitrability. [Dkt. 57 at 2.] In addition, Plaintiff argues that no matter what law applies, "no cognizable principle of 'equity' can plausibly entitle UnionTech to force [Plaintiff] to arbitrate its claims [against UnionTech]." [Dkt. 57 at 2.] The Court addresses the parties' arguments in turn below.

"Generally, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). Section 3 of the Federal Arbitration Act ("FAA") entitles litigants in federal court to a stay of any action that is "referable to arbitration under an agreement in writing." 9 U.S.C. § 3. A litigant who is not a party to the relevant arbitration agreement may invoke Section 3 if the relevant state contract law allows it to enforce the agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Here, UnionTech is not a party to the relevant arbitration agreement between Plaintiff and Miller. [*See* Dkt. 1 at 28-35.] Thus, UnionTech may only invoke Section 3 of the FAA if the relevant state law, here South Carolina law, allows it to enforce the agreement. [*See* Dkt. 1 at 34.]

UnionTech argues that South Carolina adopted the doctrine of equitable estoppel under federal law and allows a nonsignatory to enforce an arbitration provision within a contract executed by other parties. [Dkt. 51 at 8–10.] Specifically, UnionTech argues that it may compel arbitration of Plaintiff's claims against it because those claims either rely on the terms of the Agreement or raise allegations of "substantially interdependent and concerted misconduct" by

4

Miller and UnionTech. [Dkt. 51 at 15.] UnionTech primarily relies upon *Pearson v. Hilton Head Hospital*, 733 S.E.2d 597 (S.C. Ct. App. 2012), in which the South Carolina Court of Appeals applied the FAA to resolve this issue.

However, *Pearson* ignored the United States Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, which specifically held that "[n]either [Sections 2 nor 3 of the FAA] purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them). Indeed § 2 explicitly retains an external body of law governing revocation (such grounds 'as exist at law or in equity')." 556 U.S. 624, 630 (2009). The Seventh Circuit recently reiterated *Carlisle* and clarified that courts must apply traditional state estoppel principles to decide whether an arbitration agreement is enforceable by or against a non-party. *Warciak v. Subway Rests., Inc.*, No. 17-1956, slip op. at 3 (7th Cir. Jan. 25, 2018). Indeed, in *Thompson v. Pruitt Corporation.*, the South Carolina Court of Appeals even acknowledged that *Pearson* contradicts the United States Supreme Court's decision in *Carlisle* concerning the application of state law in determining whether an arbitration agreement is enforceable by or against a non-party. *Thompson v. Pruitt Corp.*, 784 S.E.2d 679, 687–88 (S.C. Ct. App. 2016). Accordingly, this Court applies South Carolina's equitable estoppel law to determine whether UnionTech, a non-signatory to the 3D Systems/Miller Agreement, is entitled to compel Plaintiff to arbitration.

Under South Carolina law, "equitable estoppel is a means of preventing a party from asserting a legal claim or defense that is contrary or inconsistent with his or her prior action or conduct." *Rodarte v. Univ. of S.C.*, 799 S.E.2d 912, 916 (S.C. 2017). "The essential elements of equitable estoppel are divided between the estopped party and the party claiming estoppel."[3] *Id.*

---

[3] In this case, UnionTech is the party claiming estoppel and 3D Systems is the party UnionTech is seeking to estop.

> [T]he elements of equitable estoppel as to the party to be estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is *calculated* to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) *intention*, or at least expectation, that such conduct shall be acted upon by the other party; and (3) *knowledge*, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Thompson*, 784 S.E.2d at 688–89 (emphasis in original) (quoting *Boyd v. Bellsouth Tel. Tel. Co.*, 633 S.E.2d 136, 142 (S.C. 2006)).

In *Thompson*, a decedent's estate brought a wrongful death and survival action against a nursing home facility, and the facility sought to compel the case to arbitration based on an arbitration provision in the decedent's intake paperwork that was signed by the decedent's son and was not legally executed by the decedent or her representative. *Id.* at 682. The South Carolina Court of Appeals rejected the facility's arguments that South Carolina contract law, including equitable estoppel, would bind the estate to arbitrate the dispute. *Id.* at 687–690. The court reasoned that, because the decedent had dementia at the time of her admission, she lacked the capacity to form an intent to mislead the facility into believing she assented to arbitration or that her children had the legal authority to agree to arbitration on her behalf. *Id.* at 689. The court further reasoned that the facility failed to show a detrimental reliance on the representation of the decedent's children that they had the authority to execute the arbitration agreement on behalf of the decedent. *Id.* The court noted that the facility even represented the arbitration agreement to be voluntary and revocable within thirty days of execution. *Id.* As a result, the court held that the facility could not rely on the doctrine of equitable estoppel to compel arbitration of the dispute. *Id.*

6

Here, as Plaintiff pointed out, the elements of equitable estoppel "are even less applicable in this case than they were in *Thompson*." [Dkt. 57 at 16.] Nothing indicates that Plaintiff made a false representation or intended to mislead UnionTech into believing that Plaintiff entered into an arbitration agreement with UnionTech. Instead, Plaintiff executed the Agreement with the intent to establish an exclusive employment relationship between Plaintiff and Miller and to avoid any interference from another third party, such as UnionTech. [*See* Dkt. 1 at 28-35.] Based upon the allegations set forth in the Amended Complaint, the only actions taken by UnionTech relating to the 3D Systems/Miller employment Agreement were directly adverse to the employment relationship between 3D Systems and Miller created therein. Similarly, nothing indicates that UnionTech relied on Plaintiff's representations as set forth in the Agreement, if any, to its detriment. Accordingly, UnionTech cannot rely on the doctrine of equitable estoppel to compel arbitration of this case.

Finally, while the Court's decision as to UnionTech's motion would have been the same even if Miller were continuing to pursue his motion to compel arbitration, the fact is that he is not. In fact, both parties to the Agreement have waived the arbitration provision: 3D Systems by filing this lawsuit against Miller, and Miller by expressly waiving his right to arbitrate in Docket No. 74. Allowing UnionTech to compel arbitration of Plaintiff's claims against it would require Plaintiff to arbitrate claims against a non-signatory to the Agreement while litigating its claims against the party who actually signed the Agreement. Such result is neither "just" nor "equitable," and is the primary and most fundamental reason that UnionTech's motion must be denied.

### III. Conclusion

For the foregoing reasons, UnionTech's *Motion to Compel Arbitration and Stay Proceedings* [Dkt. 50] is **DENIED**.

SO ORDERED.

Dated:  8 FEB 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.